IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MATERIAL YARD WORKERS LOCAL 1175 BENEFIT FUNDS, Individually and on Behalf of All Others Similarly Situated, | § § § | Civil Action No. |
| | § | CLASS ACTION |
| Plaintiff, | § § | |
| | § | |
| vs. | § § | |
| | § | |
| MEN'S WEARHOUSE INC., GEORGE ZIMMER and NEILL P. DAVIS, | § § § | |
| Defendants. | § § | JURY DEMANDED |
| | § § | |

## CLASS ACTION COMPLAINT FOR
## VIOLATIONS OF FEDERAL SECURITIES LAWS

Plaintiff has alleged the following based upon the investigation of plaintiff's counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by Men's Wearhouse Inc. ("Men's Wearhouse" or the "Company"), as well as regulatory filings and reports, securities analysts' reports and advisories about the Company, press releases and other public statements issued by the Company, and media reports about the Company, and plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

### NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of purchasers of the common stock of Men's Wearhouse between March 7, 2007 and January 9, 2008, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the SEC [17 C.F.R. §240.10b-5].

3.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act.

4.     Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. §1391(b). Many of the acts charged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this District.

5.     In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

6.     Plaintiff Material Yard Workers Local 1175 Benefit Funds, as set forth in the accompanying certification and incorporated by reference herein, purchased the common stock of Men's Wearhouse during the Class Period and has been damaged thereby.

7.     Defendant Men's Wearhouse is incorporated in Texas and maintains its headquarters at 6380 Rogerdale Road Houston, TX 77072-1624. The Company operates as a specialty retailer of men's suits in the United States and Canada.

8.     (a)   Defendant George Zimmer ("Zimmer") is the Company's co-Founder and was, at all relevant times, the Chairman and Chief Executive Officer of Men's Wearhouse.

        (b)   Defendant Neill P. Davis ("Davis") is, and was at all relevant times, Chief Financial Officer, Executive Vice President and Treasurer of Men's Wearhouse.

(c)     Defendants Zimmer and Davis are referred to herein as the "Individual Defendants."

9.     During the Class Period, the Individual Defendants, as senior executive officers and/or directors of Men's Wearhouse, were privy to confidential and proprietary information concerning Men's Wearhouse, its operations, finances, financial condition and present and future business prospects.  The Individual Defendants also had access to material adverse non-public information concerning Men's Wearhouse, as discussed in detail below.  Because of their positions with Men's Wearhouse, the Individual Defendants had access to non-public information about its business, finances, products, markets and present and future business prospects via internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and/or board of directors meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or recklessly disregarded that the adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public.

10.     The Individual Defendants are liable as direct participants in the wrongs complained of herein.  In addition, the Individual Defendants, by reason of their status as senior executive officers and/or directors, were "controlling persons" within the meaning of Section 20(a) of the Exchange Act and had the power and influence to cause the Company to engage in the unlawful conduct complained of herein.  Because of their positions of control, the Individual Defendants were able to and did, directly or indirectly, control the conduct of Men's Wearhouse's business.

11.     The Individual Defendants, because of their positions with the Company, controlled and/or possessed the authority to control the contents of its reports, press releases and

presentations to securities analysts and through them, to the investing public. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading, prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Thus, the Individual Defendants had the opportunity to commit the fraudulent acts alleged herein.

12.    As senior executive officers and/or directors and as controlling persons of a publicly traded company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act, and was, and is, traded on the New York Stock Exchange ("NYSE") and governed by the federal securities laws, the Individual Defendants had a duty to promptly disseminate accurate and truthful information with respect to Men's Wearhouse's financial condition and performance, growth, operations, financial statements, business, products, markets, management, earnings and present and future business prospects, and to correct any previously issued statements that had become materially misleading or untrue, so that the market price of Men's Wearhouse common stock would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

13.    The Individual Defendants are liable as participants in a fraudulent scheme and course of conduct that operated as a fraud or deceit on purchasers of Men's Wearhouse common stock by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding Men's Wearhouse's business, operations and management and the intrinsic value of Men's Wearhouse's common stock; (ii) allowed Defendants Zimmer and Davis and other Company insiders to collectively sell 474,518 shares of their personally-held Men's Wearhouse common stock for gross proceeds in

excess of $22.9 million; and (iii) caused plaintiff and members of the Class to purchase Men's Wearhouse common stock at artificially inflated prices.

**CLASS ACTION ALLEGATIONS**

14.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all those who purchased the common stock of Men's Wearhouse between March 7, 2007 and January 9, 2008, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

15.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Men's Wearhouse common stock was actively traded on the NYSE. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Men's Wearhouse or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

16.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law complained of herein.

17.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action and securities litigation.

– 5 –

18.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by defendants' acts as alleged herein;

(b)    whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business and operations of Men's Wearhouse;

(c)    whether the price of Men's Wearhouse common stock was artificially inflated during the Class Period; and

(d)    to what extent the members of the Class have sustained damages and the proper measure of damages.

19.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

20.    Defendant Men's Wearhouse describes itself as "one of North America's largest specialty retailers of men's apparel with 1,284 stores."

21.    The Company's U.S. retail apparel stores are operated under the brand names of Men's Wearhouse and K&G. Men's Wearhouse's Canadian stores are operated under the brand

– 6 –

name of Moores Clothing for Men. The Company's tuxedo rental stores are operated under the brand name of MW Tux, formerly known as After Hours Formalwear, Inc. ("After Hours").[1]

22.     Under the K&G brand, the Company targets the more price sensitive customer. As of February 2, 2008, Men's Wearhouse operated 105 K&G stores in 28 states.

23.     The Class Period begins on March 7, 2007. On that date, Men's Wearhouse issued a press release announcing its financial results for the fiscal fourth quarter and year end of 2006, the period ended February 3, 2007. For the quarter, the Company reported operating income of $73.2 million, net income of $52.3 million and GAAP ("Generally Accepted Accounting Principles") diluted earnings per share ("EPS") of $0.95. Commenting on the announcement, Defendant Zimmer stated, in pertinent part, as follows:

> Fiscal 2006 represented yet another year of outstanding results for all of our stakeholders. In November 2006, we announced entering into an agreement to acquire After Hours Formalwear, a $250 million tuxedo rental revenue company which is currently expected to close in the first half of fiscal 2007. Also in November 2006, we elected to redeem and retire our $130 million convertible bond indebtedness thereby strengthening our balance sheet. In January 2007, we were named once again by FORTUNE(R) magazine as one of the 100 Best Companies to Work for In America. Lastly, the Board of Directors has approved a 20% increase in the company's quarterly cash dividend from $0.05 per share to $0.06 per share.

With regard to the Company's guidance for 2007, the press release stated, in pertinent part, as follows:

> 2007 GUIDANCE AND HIGHLIGHTS
>
> For the fiscal year ending February 2, 2008, the company expects GAAP diluted earnings per share in a range of $2.80 to $2.91 based on a +1% to +2% same store sales increase in the U.S. and +3% to +4% in Canada, an effective tax rate of approximately 37.55% and fully diluted shares outstanding of 54.6 million. The 2007 guidance and highlights do not give effect to the After Hours acquisition.

---

[1]     On April 9, 2007, Men's Wearhouse acquired all of the outstanding stock of After Hours from Federated Department Stores, Inc. in exchange for an aggregate purchase price of $100.0 million.

Forecasted operating highlights for the full year include the following:

* New store growth includes up to 15 net new K&G stores and 19 net new Men's Wearhouse stores. Total square footage growth is expected in the mid to high single digit range.

* Total sales for fiscal 2007 on a comparable 52 week basis are expected to increase in a range of 5% to 7% over the prior fiscal year.

* Gross margins are planned to continue to increase and stem largely from the company's ongoing strategy of increasing the penetration of its private label apparel product offerings and growth in tuxedo rentals.

* Selling, general, and administrative expenses, as a percentage of sales, are expected to be flat year over year. Expense leverage is expected in advertising and payroll; however it is being offset by increases in stock based compensation and general corporate overhead expenses.

* Operating income margins, on a comparable 52 week year basis, are anticipated to increase in the range of 50 to 90 basis points over the prior year.

For the first quarter of 2007, the company expects +1% to +2% same store sales growth in the U.S. and +5% to +6% in Canada and GAAP diluted earnings per share to be in the range of $0.63 to $0.67. In 2007, the start of the company's fiscal calendar is later than in the past because of last year's 53rd week. This late start means that the seasonal peak period (fiscal month of May) for the company's tuxedo rentals business will shift one week earlier in the fiscal calendar and therefore is expected to benefit the company's first quarter at the expense of the second quarter.

24.    In response to the Company's positive announcements, the price of Men's

Wearhouse stock rose $4.06 per share, or 9% – to close at $47.36 per share on March 8, 2007.

25.    On April 11, 2007, Men's Wearhouse issued a press release announcing its mid

first quarter update for the quarter ending May 5, 2007. With regard to the Company's guidance,

Defendant Davis stated, in pertinent part, as follows:

After a preliminary review of the first two months' results in our fiscal first quarter, we now expect Q1 2007 GAAP diluted EPS to be at the lower end of our initial guidance range of $0.63 to $0.67, primarily due to softening U.S. sales.

26.    On May 22, 2007, Men's Wearhouse issued a press release announcing its

financial results for the fiscal first quarter of 2007, the period ended May 5, 2007. For the quarter,

the Company reported operating income of $65.3 million, net income of $40.9 million and GAAP

– 8 –

diluted EPS of $0.75 (with the After Hours acquisition contributing $0.08 to the GAAP diluted

earnings per share). Commenting on the announcement, Defendant Zimmer stated, in pertinent

part, as follows:

> During the quarter we completed the acquisition of After Hours Formalwear (AH) from Federated Department Stores. With the combination of 509 AH stores and MW's existing stores, we are now the leading retailer for the rental of men's formalwear with over 1,100 stores in the United States and Canada. We are sharply focused on capturing the synergistic potential of this acquisition and thereby enhancing shareholder value. Our current priority for the balance of this fiscal year is to complete the operational integration of AH with MW by the end of December 2007 in order to realize maximum synergies in our business model beginning in fiscal 2008. The principal elements of the integration plan involve the formulation of a branding strategy, developing a common inventory assortment, and the assimilation of store support services.

With regard to the Company's guidance for the second quarter and full year of 2007, the press

release stated, in pertinent part, as follows:

> SECOND QUARTER 2007 GUIDANCE AND UPDATED FISCAL 2007 OUTLOOK
>
> For the second quarter of 2007, the company expects same store sales growth in the U.S. to be in a range of flat to +1% and in Canada to be in a range of +4% to +6%. GAAP diluted earnings per share are expected to be in the range of $0.88 to $0.92.
>
> AH revenues for the second quarter are estimated in a range of $80 million to $85 million. After consideration of acquisition funding costs, AH is expected to be accretive to fiscal second quarter 2007 in a range of $0.15 to $0.17 per diluted share outstanding.
>
> For the fiscal year ending February 2, 2008, the company expects GAAP diluted earnings per share in a range of $2.84 to $2.94. Same store sales changes in the U.S. for fiscal 2007 are expected to be in a range of -1% to flat and in Canada are expected to be in a range of an +3% to +5%. This represents a reduction from previous expectations in the U.S. of an increase of 1% to 2% which is reflective of continued soft tailored clothing sales at both Men's Wearhouse and K&G and principally driven by slower traffic levels.
>
> AH revenues for fiscal 2007 are estimated in a range of $212.0 million to $217.0 million. After consideration of acquisition funding costs, AH is expected to be accretive to fiscal 2007 in a range of $0.03 to $0.05 per diluted share outstanding. It should be noted that the seasonality of AH revenues is heavily concentrated in April, May and June. Second quarter, followed by third quarter, is the highest revenue quarter for AH and first and fourth quarters are considered off season. Therefore, the

profitability in the second and third quarters is mostly offset by losses in the first and fourth quarters.

This guidance includes an estimated effective tax rate of approximately 37.6% and fully diluted shares outstanding of 54.5 million.

27.     In response to the Company's earnings announcement which represented, among other things, that the Company had exceeded its earnings guidance issued on April 11, 2007, shares of the price of Men's Wearhouse stock rose $4.44 per share, or 10% – to close at $49.98 per share on May 23, 2007.

28.     On July 11, 2007, Men's Wearhouse issued a press release announcing its mid second quarter update for the quarter ending August 4, 2007.  With regard to the Company's guidance, Defendant Davis stated, in pertinent part, as follows:

After a preliminary review of the first two months' results in our fiscal second quarter, we now expect Q2 2007 GAAP diluted EPS to meet or exceed the higher end of our initial guidance range of $0.88 to $0.92, primarily due to stronger retail apparel sales at the company's traditional Men's Wearhouse stores.

29.     In response to the Company's increased guidance, shares of the Company's stock rose $3.23 per share, or 6% – to close at $54.33 per share on July 12, 2007.

30.     On August 22, 2007, Men's Wearhouse issued a press release announcing its financial results for the fiscal second quarter of 2007, the period ended August 4, 2007.  For the quarter, the Company reported operating income of $82.7 million, net income of $54.2 million and GAAP diluted EPS of $1.00 (with the After Hours acquisition contributing $0.24 to the GAAP diluted earnings per share).  With regard to the Company's guidance for the third quarter and full year of 2007, the press release stated, in pertinent part, as follows:

THIRD QUARTER 2007 GUIDANCE AND UPDATED FISCAL 2007 OUTLOOK

For the third quarter of 2007, the Company expects same store sales growth in the U.S. to be in a range of flat to +1% and in Canada to be in a range of +2% to +4%. GAAP diluted earnings per share are expected to be in the range of $0.70 to $0.73.

After Hours revenues for the third quarter are estimated in a range of $64 million to $66 million. After consideration of acquisition funding costs, AH is expected to be accretive to fiscal third quarter 2007 in a range of $0.06 to $0.07 per diluted share outstanding.

For the fiscal year ending February 2, 2008, the Company expects GAAP diluted earnings per share in a range of $2.98 to $3.02. Same store sales changes in the U.S. for fiscal 2007 are expected to be flat to +1% and in Canada are expected to be in a range of +4% to +5%.

After Hours revenues for fiscal 2007 are estimated in a range of $208 million to $212 million. After consideration of acquisition funding costs, AH is expected to be accretive to fiscal 2007 in a range of $0.10 to $0.12 per diluted share outstanding. It should be noted that the seasonality of AH revenues is heavily concentrated in April, May and June. Second quarter, followed by third quarter, is the highest revenue quarter for AH and first and fourth quarters are considered off season. As a result, AH typically has income in the second and third quarters and losses in the first and fourth quarters.

For the third quarter, the guidance includes an estimated effective tax rate of approximately 37.4% and fully diluted shares outstanding of 53.9 million. For the full year, the estimated effective tax rate is 36.6% and the fully diluted shares outstanding are estimated to be 54.2 million.

31.   Throughout the Class Period, defendants held conference calls following the issuance of earnings releases to discuss the reported earnings and the Company's operations. During these calls, defendants made numerous positive statements about the Company.

32.   The statements referenced above in ¶¶23, 25, 26, 28, 30 and 31 were materially false and misleading when made because they misrepresented and failed to disclose the following adverse facts, which were known to defendants or recklessly disregarded by them:

(a)   that the K&G division was performing poorly and not meeting internal expectations;

(b)   that the Company was experiencing significant difficulties integrating the After Hours acquisition which was causing a severe disruption in that division's business and reducing sales volumes below budgeted levels;

- 11 -

(c)     that, given the deteriorating demand for the Company's products, the Company was forced to significantly discount products beyond customary discounts which would further erode earnings; and

(d)     that as a result of the foregoing, defendants' positive statements concerning the Company's guidance and prospects were lacking in a reasonable basis at all relevant times.

33.    On October 10, 2007, Men's Wearhouse issued a press release announcing its mid third quarter update for the quarter ending November 3, 2007. Defendant Davis, commenting on the Company's lowered guidance, stated, in pertinent part, as follows:

> After a preliminary review of the first two months' results in our fiscal third quarter, we are updating our Q3 2007 GAAP diluted EPS estimate to be in the range of $0.66 to $0.70, up approximately 14% to 21% over last year's third quarter GAAP results of $0.58 per diluted share. This new estimate updates our prior guidance of $0.70 to $0.73, provided on August 22, 2007.
>
> There are two principal reasons for the refinement of our third quarter estimate range. First, continued softening in traffic trends is driving weaker than planned comparable store sales at the company's K&G stores. Second, the process of integrating the recently acquired After Hours stores has required a number of operating and systems changes which has resulted in lower tuxedo rental unit volume during this adjustment period. Our integration process of After Hours continues and we remain excited about the potential return on this investment and its impact on our continued long-term earnings growth.

34.    In response to the Company's announcement of lowered guidance due to weak sales at its K&G stores and integration problems with the After Hours acquisition, the price of Men's Wearhouse common stock fell $4.32 per share, or approximately 9%, to close at $44.16 per share, on October 10, 2007, on heavy trading volume. Defendants, however, continued to conceal the true scope of the problems at the Company.

35.    On November 28, 2007, Men's Wearhouse issued a press release announcing its financial results for the third quarter of fiscal 2007, the period ended November 3, 2007. For the quarter, the Company reported operating income of $59.2 million, net income of $37.1 million and GAAP diluted earnings per share of $0.69 (with the After Hours acquisition contributing

- 12 -

$0.05 to the GAAP diluted earnings per share). With regard to the Company's guidance for the

fiscal fourth quarter and full year of 2007, the press release stated, in pertinent part, as follows:

> FOURTH QUARTER 2007 GUIDANCE AND UPDATED FISCAL 2007
> OUTLOOK
>
> For the fourth quarter of 2007, the Company expects same store sales growth in the
> U.S. to be in the negative low single digit range and in Canada to be in a range of flat
> to +2%. GAAP diluted earnings per share are expected to be in the range of $0.43 to
> $0.48.
>
> After Hours revenues for the fourth quarter are estimated in a range of $24 million to
> $26 million. After consideration of acquisition funding costs, After Hours is expected
> to be dilutive to fiscal fourth quarter 2007 in a range of $0.31 to $0.32 per diluted
> share outstanding. It should be noted that the seasonality of After Hours revenues is
> heavily concentrated in April, May and June. Second quarter, followed by third
> quarter, is the highest revenue quarter for After Hours and first and fourth quarters
> are considered off season. As a result, After Hours typically has income in the second
> and third quarters and losses in the first and fourth quarters.
>
> For the fiscal year ending February 2, 2008, the Company expects GAAP diluted
> earnings per share in a range of $2.87 to $2.92. Same store sales changes in the U.S.
> for fiscal 2007 are expected to be a decrease of 1% to flat and in Canada are expected
> to be in a range of +2% to +4%.
>
> After Hours revenues for fiscal 2007 are estimated in a range of $201 million to $203
> million. After consideration of acquisition funding costs, After Hours is expected to
> be accretive to fiscal 2007 in a range of $0.05 to $0.06 per diluted share outstanding.
>
> For the fourth quarter, the guidance includes an estimated effective tax rate of
> approximately 37.3% and fully diluted shares outstanding of 53.3 million. For the
> full year, the estimated effective tax rate is 36.6% and the fully diluted shares
> outstanding are estimated to be 54.0 million.

    36.    In response to the Company's earnings announcement and reduced guidance for

fiscal 2007, the price of Men's Wearhouse common stock fell $6.72 per share, or 16%, to close at

$34.33 per share, on November 29, 2007, on heavy trading volume.

    37.    Then, on January 9, 2008, Men's Wearhouse issued a press release announcing its

mid fourth quarter update for the quarter ending February 2, 2008. With regard to the Company's

lowered guidance, Defendant Davis stated, in pertinent part, as follows:

After a preliminary review of the first two months' results in our fiscal fourth quarter, we are updating our Q4 2007 GAAP diluted EPS estimate to be in the range of $0.16 to $0.18, and Fiscal Year 2007 GAAP diluted EPS to be in a range of $2.60 to $2.62. This new estimate updates our prior guidance of $0.43 to $0.48 for the fourth quarter and $2.87 to $2.92 for the fiscal year, provided on November 28, 2007.

Substantially lower traffic levels at all of the company's retail stores, in both the United States and Canada, for the month of December drove weaker than planned comparable store sales results. The company anticipates continued weak traffic trends for January. Excluding occupancy costs, gross profit as a percentage of total sales is estimated to be in line with initial plans for the quarter. Deleverage of occupancy, selling, general and administrative expenses resulted from the weaker than anticipated comparable store sales.

38.     In response to the Company's reduced guidance for fiscal 2007, the price of Men's Wearhouse common stock fell $7.60 per share, or 30%, to close at $17.84 per share, on January 10, 2008, on extremely heavy trading volume.

39.     On March 12, 2008, Men's Wearhouse issued a press release announcing its financial results for the fourth quarter and year end of fiscal 2007, the period ended February 2, 2008. For the quarter, the Company reported operating income of $21.5 million, net income of $14.8 million and diluted EPS of $0.28 (with After Hours decreasing the diluted earnings per share by $0.37).

40.     The market for Men's Wearhouse common stock was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and failures to disclose, Men's Wearhouse common stock traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Men's Wearhouse common stock relying upon the integrity of the market price of Men's Wearhouse common stock and market information relating to Men's Wearhouse, and have been damaged thereby.

41.     During the Class Period, defendants materially misled the investing public, thereby inflating the price of Men's Wearhouse common stock, by publicly issuing false and misleading

– 14 –

statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

42.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused, or were a substantial contributing cause of, the damages sustained by plaintiff and other members of the Class. As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about Men's Wearhouse's business, prospects and operations. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Men's Wearhouse and its business, prospects and operations, thus causing the Company's common stock to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in plaintiff and other members of the Class purchasing the Company's common stock at artificially inflated prices, thus causing the damages complained of herein.

### Additional Scienter Allegations

43.    As alleged herein, defendants acted with scienter in that defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding Men's Wearhouse, their control over, and/or receipt and/or modification of Men's Wearhouse's allegedly materially misleading

misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Men's Wearhouse, participated in the fraudulent scheme alleged herein.

44.    Defendants were further motivated to engage in this course of conduct in order to allow defendants Zimmer and Davis and other Company insiders to collectively sell 474,518 shares of their personally-held Men's Wearhouse common stock for gross proceeds in excess of $22.9 million.  The insider shares sold during the Class Period are set forth more fully in the following chart:

| Insider | Date | Shares | Price | Proceeds |
|---|---|---|---|---|
| Charles Bresler | 3/12/2007 | 22,500 | $46.57 | $1,047,825 |
| | 3/12/2007 | 3,750 | $47.54 | $178,275 |
| | 5/29/2007 | 4,485 | $50.20 | $225,147 |
| | | 30,735 | | $1,451,247 |
| | | | | |
| Rinaldo Brutoco | 6/5/2007 | 1,500 | $52.44 | $78,660 |
| | | | | |
| | | | | |
| Gary Ckodre | 3/12/2007 | 11,250 | $47.64 | $535,950 |
| | 3/12/2007 | 7,500 | $47.64 | $357,300 |
| | 3/12/2007 | 4,500 | $47.64 | $214,380 |
| | | 23,250 | | $1,107,630 |
| | | | | |
| Neill Davis | 3/12/2007 | 7,500 | $46.59 | $349,425 |
| | 3/12/2007 | 3,752 | $46.59 | $174,806 |
| | 3/12/2007 | 750 | $46.59 | $34,943 |
| | 6/13/2007 | 2,000 | $50.60 | $101,200 |
| | | 14,002 | | $660,373 |
| | | | | |
| Pasquale De Marco | 3/12/2007 | 2,000 | $47.85 | $95,700 |
| | 5/30/2007 | 1,000 | $50.73 | $50,730 |
| | | 3,000 | | $146,430 |
| | | | | |
| David Edwab | 3/20/2007 | 10,960 | $47.57 | $521,367 |
| | 3/21/2007 | 1,221 | $47.90 | $58,486 |
| | 3/21/2007 | 300 | $47.89 | $14,367 |
| | 3/21/2007 | 100 | $47.83 | $4,783 |
| | | 12,581 | | $599,003 |
| | | | | |
| Douglass Ewert | 3/12/2007 | 4,500 | $47.40 | $213,300 |
| | 3/12/2007 | 3,000 | $47.40 | $142,200 |
| | 3/12/2007 | 1,500 | $47.40 | $71,100 |
| | 5/29/2007 | 6,421 | $50.29 | $322,912 |
| | | 15,421 | | $749,512 |

| | | | | |
|---|---|---|---|---|
| Kathleen Mason | 6/5/2007 | 4,500 | $52.14 | $234,630 |
| | 6/5/2007 | 4,500 | $52.14 | $234,630 |
| | 6/5/2007 | 4,500 | $52.14 | $234,630 |
| | 6/5/2007 | 1,500 | $52.14 | $78,210 |
| | 6/5/2007 | 1,500 | $52.14 | $78,210 |
| | 6/5/2007 | 1,500 | $52.14 | $78,210 |
| | | 18,000 | | $938,520 |
| | | | | |
| Michael Ray | 3/14/2007 | 3,000 | $46.44 | $139,320 |
| | 3/14/2007 | 3,000 | $46.44 | $139,320 |
| | 3/14/2007 | 1,500 | $46.44 | $69,660 |
| | 3/14/2007 | 1,500 | $46.44 | $69,660 |
| | 3/14/2007 | 1,500 | $46.28 | $69,420 |
| | | 10,500 | | $487,380 |
| | | | | |
| William Silveira | 3/13/2007 | 7,500 | $47.69 | $357,675 |
| | 3/13/2007 | 6,000 | $47.69 | $286,140 |
| | 3/13/2007 | 3,000 | $47.69 | $143,070 |
| | 5/30/2007 | 3,855 | $50.58 | $194,986 |
| | | 20,355 | | $981,871 |
| | | | | |
| Carole Souvenir | 3/13/2007 | 3,749 | $47.94 | $179,727 |
| | | | | |
| | | | | |
| Sheldon Stein | 5/29/2007 | 4,500 | $50.54 | $227,430 |
| | | | | |
| | | | | |
| Christopher Zender | 5/31/2007 | 750 | $52.67 | $39,503 |
| | 5/31/2007 | 675 | $52.52 | $35,451 |
| | | 1,425 | | $74,954 |
| | | | | |
| George Zimmer | 3/21/2007 | 37,500 | $47.37 | $1,776,375 |
| | 4/23/2007 | 37,500 | $43.65 | $1,636,875 |
| | 5/21/2007 | 37,500 | $46.36 | $1,738,500 |
| | 6/21/2007 | 37,500 | $51.23 | $1,921,125 |
| | 7/23/2007 | 37,500 | $53.49 | $2,005,875 |
| | 8/21/2007 | 37,500 | $50.28 | $1,885,500 |
| | 9/24/2007 | 37,500 | $49.48 | $1,855,500 |
| | 10/19/2007 | 3,000 | $39.94 | $119,820 |
| | | 265,500 | | $12,939,570 |
| | | | | |
| James Zimmer | 4/2/2007 | 50,000 | $47.34 | $2,367,000 |
| | | | | |
| **Grand Total:** | | **474,518** | | **$22,989,307** |

## Loss Causation/Economic Loss

45.    During the Class Period, as detailed herein, defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the prices of Men's Wearhouse common stock and operated as a fraud or deceit on Class Period purchasers of Men's

- 17 –

Wearhouse common stock by failing to disclose to investors that the Company was experiencing weak sales at its K&G stores and integration problems with the After Hours acquisition. When defendants' prior misrepresentations and fraudulent conduct were disclosed and became apparent to the market, the price of Men's Wearhouse common stock fell precipitously as the prior artificial inflation came out. As a result of their purchases of Men's Wearhouse common stock during the Class Period, plaintiff and the other Class members suffered economic loss, *i.e.*, damages, under the federal securities laws.

46.     By failing to disclose to investors that the Company was experiencing weak sales at its K&G stores and integration problems with the After Hours acquisition, among other things, defendants presented a misleading picture of Men's Wearhouse's business and prospects. Defendants' false and misleading statements had the intended effect and caused Men's Wearhouse common stock to trade at artificially inflated levels throughout the Class Period, reaching as high as $56.24 per share on July 17, 2007.

47.     As a direct result of information disclosed on October 10, 2007, November 28, 2007 and January 9, 2007, the price of Men's Wearhouse common stock fell precipitously, falling from $48.48 per share on October 10, 2007 to $17.84 per share on January 10, 2007 – a decline of 63%. These drops removed the inflation from the price of Men's Wearhouse common stock, causing real economic loss to investors who had purchased Men's Wearhouse common stock during the Class Period.

48.     The 63% decline in the price of Men's Wearhouse common stock after these disclosures came to light was a direct result of the nature and extent of defendants' fraud finally being revealed to investors and the market. The timing and magnitude of the price decline in Men's Wearhouse common stock negates any inference that the loss suffered by plaintiff and the other Class members was caused by changed market conditions, macroeconomic or industry

- 18 -

factors or Company-specific facts unrelated to the defendants' fraudulent conduct. The economic loss, *i.e.*, damages, suffered by plaintiff and the other Class members was a direct result of defendants' fraudulent scheme to artificially inflate the prices of Men's Wearhouse common stock and the subsequent significant decline in the value of Men's Wearhouse common stock when defendants' prior misrepresentations and other fraudulent conduct were revealed.

### Applicability of Presumption of Reliance: Fraud on the Market Doctrine

49.     At all relevant times, the market for Men's Wearhouse common stock was an efficient market for the following reasons, among others:

(a)     Men's Wearhouse common stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)     as a regulated issuer, Men's Wearhouse filed periodic public reports with the SEC and the NYSE;

(c)     Men's Wearhouse regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)     Men's Wearhouse was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

50.     As a result of the foregoing, the market for Men's Wearhouse common stock promptly digested current information regarding Men's Wearhouse from all publicly available sources and reflected such information in the prices of the stock. Under these circumstances, all

- 19 -

purchasers of Men's Wearhouse common stock during the Class Period suffered similar injury through their purchase of Men's Wearhouse common stock at artificially inflated prices and a presumption of reliance applies.

## No Safe Harbor

51.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements were made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Men's Wearhouse who knew that those statements were false when made.

## COUNT I

### Violation of Section 10(b) of the Exchange Act and
### Rule 10b-5 Promulgated Thereunder Against All Defendants

52.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

53.     During the Class Period, defendants disseminated or approved the materially false and misleading statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts

necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

54.     Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock during the Class Period.

55.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Men's Wearhouse common stock. Plaintiff and the Class would not have purchased Men's Wearhouse common stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by defendants' misleading statements.

56.     As a direct and proximate result of defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their purchases of Men's Wearhouse common stock during the Class Period.

**COUNT II**

**Violation of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

57.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

58.     The Individual Defendants acted as controlling persons of Men's Wearhouse within the meaning of Section 20(a) of the Exchange Act as alleged herein. By reason of their positions as officers and/or directors of Men's Wearhouse, and their ownership of Men's Wearhouse stock, the Individual Defendants had the power and authority to cause Men's

- 21 -

Wearhouse to engage in the wrongful conduct complained of herein. By reason of such conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

**WHEREFORE**, plaintiff prays for relief and judgment, as follows:

A.    Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a Class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

B.    Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.    Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.    Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED: October 8, 2009          SCHWARTZ, JUNELL, GREENBERG &
                                OATHOUT, LLP


                                _/s/ Roger B. Greenberg_
                                ROGER B. GREENBERG

                                Roger B. Greenberg
                                Federal I.D. No. 3239
                                Texas State Bar No. 08390000
                                Thane Tyler Sponsel III
                                Federal I.D. No. 690068
                                Texas State Bar No. 24056361
                                Two Houston Center
                                909 Fannin Street, Suite 2700
                                Houston, Texas 77010
                                Telephone: (713) 752-0017
                                Facsimile: (713) 752-0327

- 22 –

151866

COUGHLIN STOIA GELLER
 RUDMAN & ROBBINS LLP
SAMUEL. RUDMAN
DAVID A. ROSENFELD
MARIO ALBA JR.
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

BISCEGLIE & DE MARCO, LLC
ANGELO R. BISCEGLIE, JR.
365 Rifle Camp Road
West Paterson, NJ  07424
Telephone:  973/742-8900
973/742-8394 (fax)

Attorneys for Plaintiff

151866

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

MATERIAL YARD WORKERS LOCAL 1175 BENEFIT FUNDS ("Plaintiff") declares:

1.    Plaintiff has reviewed a complaint and authorized its filing.

2.    Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.    Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.    Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:

| Security | Transaction | Date | Price Per Share |
|----------|-------------|------|-----------------|

*See* attached Schedule A.

5.    Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws except as detailed below during the three years prior to the date of this Certification:

*Material Yard Workers Local 1175 Benefit Funds v. Bare Escentuals, Inc., et al.*, No. 09-cv-03268-PJH (N.D. Cal.)

6.    The Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery,

MEN'S WEARHOUSE

except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 30th day of   September  , 2009.

MATERIAL YARD WORKERS
LOCAL 1175 BENEFIT FUNDS

By: _____

Frank P. Ombres

Its: _____

-2-

Men's Warehouse

SCHEDULE A

SECURITIES TRANSACTIONS

Acquisitions

| Date Acquired | Type/Amount of Securities Acquired | Price |
|---|---|---|
| 09/07/2007 | 31 | $48.26 |
| 09/07/2007 | 370 | $48.26 |
| 09/11/2007 | 130 | $48.05 |
| 09/12/2007 | 7 | $47.52 |