IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MATERIAL YARD WORKERS LOCAL 1175 BENEFIT FUNDS, on behalf of itself and others similarly situated, | § § § § | |
| Plaintiff, | § § | CIVIL ACTION NO. H-09-03265 JUDGE LYNN N. HUGHES |
| v. | § § | |
| THE MEN'S WEARHOUSE, INC., GEORGE ZIMMER, AND NEILL P. DAVIS, | § § | |
| Defendants. | | |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

-i-

## TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................................. 1

I. PLAINTIFFS' ENTIRE CASE IS PREDICATED ON THE ALLEGATIONS OF "CW1," WHICH DO NOT SATISFY THE PSLRA OR TELLABS ............................... 2

    A. The Guidance Allegations Are Patently Insufficient ................................ 4

    B. The "Advertising" Allegations Do Not Support A Strong Inference Of Fraud ........................................................................................................ 7

II. THE RESPONSE FAILS TO SHOW HOW THE ALLEGED INFERENCE OF FRAUD IS "COGENT" AND "AT LEAST AS COMPELLING" AS THE INFERENCE THAT ZIMMER AND DAVIS DID NOT COMMIT FRAUD ............... 11

III. THE FIVE ALLEGED NON-FORWARD-LOOKING STATEMENTS IDENTIFIED IN THE RESPONSE ARE NOT REMOTELY FRAUDULENT ............ 12

IV. PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION ................................................... 14

CONCLUSION ................................................................................................................ 14

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*In re Administaff, Inc. Secs. Litig.*,
    No. Civ.A H-03-2082, 2006 WL 846378 (S.D. Tex. Mar. 30, 2006)..........................1, 3, 5

*Archdiocese of Milwaukee Supporting Fund, Inc. v. Halliburton Co.*,
    _ F.3d _, 2010 WL 481407 (5th Cir. Feb. 12, 2010) ...................................................13, 14

*Beach v. Healthways, Inc.*,
    No. 3:08-0569, 2009 WL 650408 (M.D. Tenn. Mar. 9, 2009) ...........................................4

*Brodsky v. Yahoo! Inc.*,
    630 F. Supp. 2d 1104 (N.D. Cal. 2009) ...........................................................................11

*Central Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*,
    497 F.3d 546 (5th Cir. 2007) ......................................................................................2, 3, 11

*In re Cerner Corp. Secs. Litig.*,
    425 F.3d 1079 (8th Cir. 2005) .............................................................................................3

*In re Check Point Software Technologies Ltd. Secs. Litig.*,
    No. 03 Civ. 6594, 2006 WL 1116699 (S.D.N.Y. Apr. 26, 2006) ........................................4

*City of Hialeah Employees' Retirement Sys. v. Toll Brothers, Inc.*,
    C.A. No. 07-1513, 2008 WL 4058690 (E.D. Pa. Aug. 29, 2008) .......................................4

*In re Dell Inc. Secs. Litig*,
    591 F. Supp. 2d 877 (W.D. Tex. 2008)...............................................................1, 8, 11, 14

*In re Enron Corp. Secs., Deriv. & ERISA Litig.*,
    258 F. Supp. 2d 576 (S.D. Tex. 2003) ..............................................................................11

*Indiana Elec. Workers' Pension Trust Fund IBEW v. Shaw Group, Inc.*,
    No. Civ.A 4:04-CV-3342, 2006 WL 54021 (S.D. Tex. Jan. 10, 2006), *aff'd*,
    537 F.3d 527 (5th Cir. 2008) ..............................................................................................1

*Indiana Elec. Workers' Pension Trust Fund IBEW v. Shaw Group, Inc.*,
    537 F.3d 527 (5th Cir. 2008) .........................................................................2, 8, 10, 11

*Limantour v. Cray Inc.*,
    432 F. Supp. 2d 1129 (W.D. Wash. 2006).........................................................................3

*In re Michaels Stores, Inc. Secs. Litig.*,
    2004 WL 2851782 (N.D. Tex. Dec. 10, 2004) ................................................................11

*Oppenheim Pramerica Asset Mgmt. S.A.R.L. v. Encysive Pharms., Inc.*,
    No. Civ. A.H-06-3022, 2007 WL 2720074 (S.D. Tex. Sept. 18, 2007) ............................. 1

*Patel v. Parnes*,
    253 F.R.D. 531 (C.D. Cal. 2008) ..................................................................................... 4

*R2 Invs., LDC v. Phillips*,
    401 F.3d 638 (5th Cir. 2005) ........................................................................................... 7

*Rosenbaum Capital, LLC v. McNulty*,
    549 F. Supp. 2d 1185 (N.D. Cal. 2008) ........................................................................... 4

*Selbst v. McDonald's Corp.*,
    432 F. Supp. 2d 777 (N.D. Ill. 2006) ............................................................................... 4

*Selbst v. McDonald's Corp.*,
    Nos. 04-C-2422, 2005 WL 2319936 (N.D. Ill. Sept. 21, 2005) ....................................... 4

*In re Synovis Life Tech., Inc. Sec. Litig.*,
    2005 WL 2063870 (D. Minn. Aug. 25, 2005) ................................................................. 5

*Tellabs, Inc. v. Makor Issues & Rights Ltd.*,
    551 U.S. 308 (2007) ............................................................................................ 1, 2, 3, 6, 9

*In re TETRA Technologies, Inc. Secs. Litig.*,
    Civ. Action No. 4:08-cv-0965, 2009 WL 6325540 (S.D. Tex. July 9, 2009) ............ 3, 5, 6

*Zack v. Allied Waste Indus., Inc.*,
    No. CIV04-1640PHXMHM, 2005 WL 3501414 (D. Ariz. Dec. 15, 2005) ...................... 6

*In re Zumiez Inc. Secs. Litig.*,
    No. C07-1980-JCC, 2009 WL 901934 (W.D. Wash. Mar. 30, 2009) ............................... 4

**RULES AND STATUTES**

15 U.S.C. § 78u5-(c)(1)(B) ........................................................................................................ 12

Fed. R. Civ. P. 12(b)(6) ..................................................................................................... 13, 14

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MATERIAL YARD WORKERS LOCAL 1175 BENEFIT FUNDS, on behalf of itself and others similarly situated, | § § § § | |
| Plaintiff, | § § | CIVIL ACTION NO. H-09-03265 JUDGE LYNN N. HUGHES |
| v. | § § | |
| THE MEN'S WEARHOUSE, INC., GEORGE ZIMMER, AND NEILL P. DAVIS, | § § | |
| Defendants. | | |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

Plaintiffs' Response ignores the first principle of a PSLRA case: that the allegations must support a strong inference of *fraud* – which the Supreme Court has defined as an "intent to deceive, manipulate, or defraud"[1] – to survive a motion to dismiss. Because the allegations come nowhere close to meeting the PSLRA's requirements and do not demonstrate anything resembling securities fraud, the Court should dismiss the Amended Complaint with prejudice.[2]

---

[1] *Tellabs, Inc. v. Makor Issues & Rights Ltd.*, 551 U.S. 308, 319 (2007). While Plaintiffs fail even to show that Defendants' statements were false (let alone fraudulently so), the Reply will primarily address scienter given the threshold nature of this issue.

[2] *See, e.g., In re Dell Inc. Secs. Litig.*, 591 F. Supp. 2d 877, 913 (W.D. Tex. 2008) (denying leave to amend initial consolidated amended complaint filed after selection of lead counsel); *Oppenheim Pramerica Asset Mgmt. S.A.R.L. v. Encysive Pharms., Inc.*, No. Civ. A.H-06-3022, 2007 WL 2720074, at *6 (S.D. Tex. Sept. 18, 2007) (dismissing with prejudice initial consolidated complaint filed after selection of lead counsel; "The Court will not further delay the final resolution of this dispute by allowing yet another amendment"); *In re Administaff, Inc. Secs. Litig.*, No. Civ.A H-03-2082, 2006 WL 846378 (S.D. Tex. Mar. 30, 2006) (dismissing initial consolidated complaint with prejudice); *In re Integrated Elec. Servs., Inc. Secs. Litig.*, No. Civ.A 4:04-CV-3342, 2006 WL 54021 (S.D. Tex. Jan. 10, 2006), *aff'd*, 497 F.3d 546, 556 (5th Cir. 2007) (dismissing initial consolidated complaint with prejudice, which Fifth Circuit affirmed).

### I. PLAINTIFFS' ENTIRE CASE IS PREDICATED ON THE ALLEGATIONS OF "CW1," WHICH DO NOT SATISFY THE PSLRA OR *TELLABS*

As the Response makes clear, Plaintiffs pin virtually their entire case on the alleged anonymous statements of "CW1," who allegedly claimed that K&G was "below plan" for 2007.[3] Those allegations do not meet the Fifth Circuit's requirements for "confidential source" allegations or support the required "strong inference" of deceptive, manipulative, or fraudulent conduct. Indeed, the Fifth Circuit has held that "courts must discount allegations from confidential sources," and that "[s]uch sources afford ***no basis*** for drawing the plausible competing inferences [of scienter] required by *Tellabs*."[4] Plaintiffs also fail to provide "specific details, such as particular job descriptions, individual responsibilities, and specific employment dates" as required by the Fifth Circuit,[5] and instead describe CW1 as holding an undisclosed "high level senior management position with K&G at the time of his departure," with no allegation regarding his title, responsibilities, or dates of service.[6]

The allegations regarding CW1 violate the PSLRA in virtually every respect and do not support a strong inference of fraud, particularly when the Court engages in the "weighing" of

---

[3] *See* Amended Complaint ¶¶ 32-40. Nearly all of the alleged false statements on pages 16-17 of the Response are predicated on alleged statements by CW1.

[4] *Indiana Elec. Workers' Pension Trust Fund IBEW v. Shaw Group, Inc.*, 537 F.3d 527, 535-36 (5th Cir. 2008). In footnote 11 on page 23 of their Response, Plaintiffs attempt to minimize *Shaw Group* by claiming that a subsequent decision in another circuit credited confidential source allegations under certain narrow circumstances. Plaintiffs, however, fail to identify any post-*Shaw Group* decision from the Fifth Circuit that would allow the types of allegations in this case to survive dismissal. Severely discounting allegations from confidential sources not only is required by *Shaw Group*, it is also more faithful to the PSLRA's plain language, which requires that "if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity ***all facts on which that belief is formed***." 15 U.S.C. § 78u-4(b)(1) (emphasis added). Baldly asserting that an allegation comes from an unnamed "high level senior manag[er]" at K&G does not state "all facts" on which the allegation is based and is insufficient under *Shaw Group* and the PSLRA.

[5] *Central Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*, 497 F.3d 546, 552 (5th Cir. 2007) (affirming dismissal and rejecting confidential witness allegations that lacked such details).

[6] *See* Amended Complaint ¶¶ 32-40.

fraudulent and nonfraudulent inferences required by *Tellabs*.[7]  The mere allegation that an unnamed employee of a discrete business unit (K&G) representing less than one-fifth of TMW's total 2007 revenue, who claims no personal knowledge regarding how TMW's ***company-wide*** guidance was calculated and does not allege that TMW misstated any historical financial information or overstated its ***actual*** performance, allegedly had a different opinion than senior TMW management regarding K&G's estimated future performance as compared to an unspecified internal "plan" with no specific allegation of how the "plan" relates to TMW's public guidance, "sheds no light on the relevant issue of whether the Individual Defendants shared this view, or indeed of whether the forecasts [for TMW as a whole] were necessarily unattainable." *In re Cerner Corp. Secs. Litig.*, 425 F.3d 1079, 1086 (8th Cir. 2005).

Indeed, the Southern District of Texas recently rejected a more detailed set of "confidential witness" allegations regarding the alleged inaccuracy of forecasts.  *See In re TETRA Technologies, Inc. Secs. Litig.*, Civ. Action No. 4:08-cv-0965, 2009 WL 6325540, at *32-33 (S.D. Tex. July 9, 2009) (noting that confidential source "had personal knowledge of the proper forecasts ***for his region . . . [but no] personal knowledge of the forecasts for the overall Fluids Division***," and rejecting allegation by another source that individual defendant would "change" forecasts) (emphasis added).[8]  The Southern District and numerous other courts have likewise emphasized that mere disagreements over forecasting does not demonstrate fraud.  *See, e.g., In re Administaff, Inc. Secs. Litig.*, No. Civ.A H-03-2082, 2006 WL 846378, at *8 (S.D.

---

[7] *Central Laborers*, 497 F.3d at 551 (court must weigh competing inferences under *Tellabs*).

[8] Plaintiffs also cite *In re TETRA* (*see* Response at 32-33), but ignore that Judge Ellison dismissed ***all claims relating to projections***.  *See* 2009 WL 6325540, at *31-33.  The only claim not dismissed was a claim that TETRA represented it was owed significant insurance receivables while knowing that such claims had already been denied.  *See* 2009 WL 6325540, at *34-36.  No similar claim is made here.  Plaintiffs cannot reasonably argue that their claims in this case could withstand Judge Ellison's analysis in *In re TETRA*.

Tex. Mar. 30, 2006) (dismissing claims despite internal documents undercutting likelihood of achieving projections; allegations failed to show projections were "impossible to achieve").[9]

By contrast, Plaintiffs cite various non-Fifth Circuit or Southern District of Texas cases involving far more serious allegations.[10] Those cases simply confirm why this case fails.

### A.     The Guidance Allegations Are Patently Insufficient

The alleged assertions by CW1, which form virtually the entire basis for Plaintiffs' claim that TMW issued false guidance,[11] are plainly insufficient to support a strong inference of fraud. There is no allegation that CW1 had any involvement whatsoever in determining TMW's company-wide guidance for 2007 or any personal knowledge of how TMW's company-wide guidance was calculated or updated. The Response provides no basis to conclude that Zimmer or

---

[9] *See also In re Zumiez Inc. Secs. Litig.*, No. C07-1980-JCC, 2009 WL 901934, at *7 (W.D. Wash. Mar. 30, 2009) ("Plaintiffs rely primarily on eleven confidential witnesses, most, if not all, of whom were in no position to have information concerning company-wide performance"); *Patel v. Parnes*, 253 F.R.D. 531, 559 (C.D. Cal. 2008) (no strong inference of scienter despite far more specific CW allegations because, like TMW, the company publicly disclosed a declining sales trend and simply failed to anticipate the degree of the decline); *Limantour v. Cray Inc.*, 432 F. Supp. 2d 1129, 1148 (W.D. Wash. 2006) (no scienter despite allegation that CW told executive that company's forecasting process was "completely inadequate").

[10] *See* Response at 18-19. For example, although Plaintiffs cite an unpublished 2005 opinion in *Selbst v. McDonald's Corp.*, Nos. 04-C-2422, 2005 WL 2319936 (N.D. Ill. Sept. 21, 2005), Plaintiffs leave out the fact that the district court subsequently ***granted*** dismissal in a published 2006 opinion and ***rejected*** the forward-looking statement and confidential witness allegations as insufficient under the PSLRA. *See Selbst v. McDonald's Corp.*, 432 F. Supp. 2d 777, 782-85 (N.D. Ill. 2006). Plaintiffs also rely heavily on *UTStarcom, Inc. Secs. Litig.*, 617 F. Supp. 2d 964, 974-76 (N.D. Cal. 2009). That case, however, involved a $400 million financial restatement, an SEC investigation that found internal control violations, the firing of the company's executives when the restatement was announced, and the defendants' sale of more than 98% of their stock holdings. No similar facts are alleged here. In *Beach v. Healthways, Inc.*, No. 3:08-0569, 2009 WL 650408, at *4-5 (M.D. Tenn. Mar. 9, 2009), the complaint specifically asserted the defendants had "actual knowledge of the alleged misrepresentations" and knew that major customers had already substantially reduced their business with the defendant. In *City of Hialeah Employees' Retirement Sys. v. Toll Brothers, Inc.*, C.A. No. 07-1513, 2008 WL 4058690, at *5 (E.D. Pa. Aug. 29, 2008), the complaint contained particularized allegations of unusual insider trading, which Plaintiffs fail to plead here. In *Rosenbaum Capital, LLC v. McNulty*, 549 F. Supp. 2d 1185, 1192-93 (N.D. Cal. 2008), there were particularized allegations that the company knowingly misrepresented its progress in integrating an acquired company, rather than a mere business disagreement about how the acquired companies were run. In *Darquea v. Jarden Corp.*, No. 06 CV 0722, 2007 WL 1610146, at *8 (S.D.N.Y. May 31, 2007), the defendants allegedly made false statements of historical fact regarding their ongoing sales. In *In re Check Point Software Technologies Ltd. Secs. Litig.*, No. 03 Civ. 6594, 2006 WL 1116699, at *3-4 (S.D.N.Y. Apr. 26, 2006), there were specific allegations that corporate officers knew of specific problems with the company's products.

[11] Plaintiffs also cite allegations by CW2, but there is no allegation this alleged witness had any involvement or knowledge whatsoever regarding the guidance process. *See* Amended Complaint ¶¶ 41-42.

Davis knew it would be "mathematically impossible" to meet guidance, or that they had actual knowledge that the methodology for calculating TMW's external guidance was fraudulent.[12]

Instead, CW1 merely alleges that K&G's sales (but not TMW's sales) were "below" an unspecified number in an internal annual "plan" developed in November 2006, which is a far cry from a particularized allegation that TMW's external company-wide guidance in 2007 (which was calculated and updated twice per quarter) was knowingly false. There are no details regarding: (i) what the phrase "below plan" actually means; (ii) whether the "plan" numbers for K&G reflected total revenue, profits, comparable store sales, or some other metric, thus precluding any meaningful comparison between the alleged "plan" and TMW's actual guidance;[13] (iii) what, if any, relationship there was between the "plan" described by CW1 and TMW's public company-wide guidance; (iv) how (if at all) the "plan" was used to calculate TMW's company-wide guidance; or (v) whether and how the "plan" ties to any specific guidance projection alleged to be false.[14] The Amended Complaint also acknowledges that TMW used different internal "plans" and "goals" for different purposes; indeed, CW2 allegedly describes a second multi-tiered set of "sales goals" for Men's Wearhouse stores with no explanation of how it relates to the "plan" described by CW1 or to TMW's public guidance.[15]

---

[12] *E.g.*, *In re TETRA Technologies*, 2009 WL 6325540, at *31-33 (rejecting similar allegations as insufficient); *In re Administaff*, 2006 WL 846378, at *8 (allegations failed to show projections were "mathematically impossible"); *In re Synovis Life Tech., Inc. Sec. Litig.*, 2005 WL 2063870, at *14-16 (D. Minn. Aug. 25, 2005) (no strong inference of scienter where plaintiffs failed to allege specific facts showing that the methodology for calculating guidance was false or misleading).

[13] Plaintiffs backhandedly acknowledge this problem in footnote 9 on page 21 of their Response by claiming that comparing the "plan" to K&G's same-store sales performance was like comparing "apples to oranges." It is Plaintiffs who created this problem by failing to allege what precise metric the phrase "below plan" refers to.

[14] Amended Complaint ¶¶ 34-39.

[15] *Id.* ¶¶ 41-42 (alleging that "the Company was discussing a mid-year adjustment to lower the plan for the year to an attainable goal given that the original plan for the year could not be met").

Nor do Plaintiffs allege that CW1 had any personal involvement in developing the November 2006 "plan," let alone in calculating TMW's actual guidance[16]   CW1 freely acknowledges that "[e]ach of the Company's businesses *forecasted separately* and then a company-wide forecast was prepared," and that "[t]he forecasts were created through a 'give and take' between the Presidents of each operating business and Defendant Davis."[17]  Plaintiffs thus admit that forecasts were made "separately" by others at TMW.  There is no allegation CW1 had any personal knowledge regarding these forecasts or how they were used to calculate guidance.

The allegation that K&G CFO Brad Bell "changed the initial forecasts for the second and third quarter 2007 to reflect Davis and Ewert's preference for an 8 percent revenue loss against plan" likewise fails to support a strong inference of scienter.[18]  Courts routinely reject allegations that guidance is false merely because another executive allegedly "changed" it.[19]  There are many reasons an "initial" forecast might be changed and "give and take" among senior executives is often one of them; that is why it is called an "initial" forecast.

The CW1 allegations thus violate the PSLRA and do not support a strong inference of scienter.  If CW1 had specific knowledge that guidance was false, one would expect Plaintiffs to have alleged this information rather than face dismissal under the PSLRA – which is why "omissions and ambiguities count against" inferring scienter.  *Tellabs*, 127 S. Ct. at 2509-10.

---

[16] Plaintiffs simply allege that "[t]he Company's management developed its annual plan for fiscal year 2007 in November of 2006," with no allegation that CW1 himself had any involvement in the "development" of the "plan" in 2006 or any refinement to the plan thereafter.  *See id.* ¶ 34.  Indeed, as this allegation concedes, this process was undertaken by "***the Company's*** management" – *i.e.*, TMW's management, not K&G's management.  *Id.*

[17] *Id.* ¶ 36.

[18] *See* Amended Complaint ¶ 38.

[19] *See, e.g., In re TETRA Technologies*, 2009 WL 6325540, at *33 (rejecting confidential witness allegation that individual defendant would "change" forecasts provided by the witness); *Zack v. Allied Waste Indus., Inc.*, No. CIV04-1640PHXMHM, 2005 WL 3501414, at *7 (D. Ariz. Dec. 15, 2005) (rejecting confidential witness allegation that named defendants revised department forecasts upward and observing that complaint "fails to state these original forecasts were more reliable or accurate than ultimate forecasts").

### B. The "Advertising" Allegations Do Not Support A Strong Inference Of Fraud

The Response also fails to articulate a plausible inference, let alone a "strong" inference, that Zimmer and Davis intentionally sought to deceive investors or were severely reckless[20] with respect to the fourth quarter advertising for K&G – an argument again premised entirely on CW1's alleged anonymous statements.[21] It is entirely unreasonable to draw an inference that Zimmer and Davis – experienced businessmen with significant TMW stock holdings – intentionally shut down all K&G advertising knowing that such an action would devastate K&G's earnings and damage their own company and stock holdings. Such an inference is neither "cogent" nor "at least as compelling" as the inference that: (i) TMW did not shut down all advertising for K&G; and (ii) Zimmer and Davis believed they were trying to improve, rather than sabotage, their company's performance.

The Response also ignores Plaintiffs' failure to plead with particularity what "advertising" was allegedly discontinued. Plaintiffs allege only that "the Company would not 'anniversary[,]' *i.e.*, repeat, the marketing it had engaged in during the fourth quarter of 2006," and that "the Company did not pay for a fourth quarter 2007 advertising campaign," with no explanation of exactly what "advertising campaign" from 2006 was supposedly discontinued; whether it was television, radio, print, or internet-based advertising; or what products or promotions were being advertised. *Id.* TMW never represented it would run exactly the same campaign in the fourth quarter of 2007 that it ran during the fourth quarter of 2006. Just because TMW did not "anniversary" the 2006 campaign does not mean that no advertising at all was run

---

[20] To plead severe recklessness, Plaintiffs must plead specific facts supporting a strong inference that Defendants' disclosures reflected an "extreme departure" from the standards of ordinary care. *See R2 Invs., LDC v. Phillips*, 401 F.3d 638, 641 (5th Cir. 2005).

[21] Response at 13, 17; Amended Complaint ¶¶ 39-40.

-7-

during the fourth quarter of 2007. The inference that TMW would summarily cancel all advertising is facially implausible and is clearly not as compelling as the inference that TMW continued to advertise, an inference strengthened by the fact TMW *increased* its advertising spending in 2007.[22] While CW1 may disagree with TMW's advertising and business decisions, disagreements over business strategies do not support a strong inference of fraud.[23]

Finally, the Response wholly fails to show how Plaintiffs have alleged loss causation with respect to the advertising issue. Plaintiffs identify no corrective disclosure where the supposed falsity of TMW's statements regarding advertising was revealed to the public and caused a loss. The mere fact that TMW had to lower its guidance does not demonstrate loss causation with respect to advertising. *See In re Dell*, 591 F. Supp. 2d at 909-10 ("[D]isclosure of financial losses generally – *even if those financial losses are a result of the specific concealed fact* – is not sufficient' to establish – or allege – loss causation.'") (emphasis added) (quoting *In re Rhodia S.A. Secs. Litig.*, 531 F. Supp. 2d 527, 545 (S.D.N.Y. 2007)). The Fifth Circuit has observed that reduced or unmet earnings guidance does not demonstrate loss causation as to other undisclosed problems that allegedly caused guidance to be lower.[24]

---

[22] Dkt. #27-1 at 6. The Court must take into account all facts in the Amended Complaint and the SEC filings attached to Defendants' Motion in determining whether a strong inference has been pled. *See Tellabs*, 551 U.S. at 322-23. Plaintiffs do not dispute that the SEC filings attached to Defendants' Motion are properly considered in this analysis. While Plaintiffs argue that this increase in spending does not "disprove" their advertising allegations (*see* Response at 17), it is Plaintiffs' burden under the PSLRA, *Tellabs*, and *Shaw Group* to plead particularized facts supporting a strong inference of fraud, not Defendants' burden to "disprove" such an inference.

[23] Moreover, while the Response appears to argue that TMW made misrepresentations regarding K&G's advertising plans in the August 22, 2007 press release and conference call (*see* Response at 17), the Amended Complaint does not allege that Defendants made *any* false statements or omissions regarding advertising at that time. *See* Amended Complaint ¶ 66 (omitting any reference to advertising in allegations regarding August 22 statements). The August 22 statement merely stated that TMW was "continuing to spend our advertising dollars [for K&G] on television, not promotional print," and referred to the second and third quarters. Dkt. #26-11 at 4, 11. Regardless, Plaintiffs have failed to plead anything resembling a strong inference of fraud.

[24] *See Alaska Elec. Pension Fund v. Flowserve*, 572 F.3d 221, 232 (5th Cir. 2009) (holding that if plaintiffs could not establish "that the market learned more than that Flowserve's earnings guidance was lower and so its business seemed less valuable, it cannot establish that its loss was caused by Flowserve's misstatements pertaining to past financials, acquisition synergies, or debt-covenant compliance").

## II. THE RESPONSE FAILS TO SHOW HOW THE ALLEGED INFERENCE OF FRAUD IS "COGENT" AND "AT LEAST AS COMPELLING" AS THE INFERENCE THAT ZIMMER AND DAVIS DID NOT COMMIT FRAUD

The Response likewise fails to explain how the allegations, when considered holistically as required by *Tellabs*, support an inference of fraud that is both "cogent" and "at least as compelling" as the overwhelming counter-inference that Zimmer and Davis did not act fraudulently. Numerous facts weigh heavily against inferring fraud, including the fact that:

- TMW *achieved* its earnings guidance for the first quarter, *exceeded* its guidance for the second quarter, was only a penny off its initial guidance for the third quarter, achieved its revised mid-quarter guidance for the third quarter, exceeded its mid-quarter guidance for the fourth quarter, and ultimately earned $2.73 per diluted share for fiscal 2007, which was just seven cents below the lower range of guidance given eleven months earlier on March 7, 2007. Plaintiffs can hardly argue that TMW's guidance was "mathematically impossible" to achieve when TMW nearly achieved it. There is no allegation TMW's actual results were false.

- CW1's allegations about the "plan" are flatly contradicted by TMW's actual performance during the alleged class period. Again, *there is no allegation that TMW's actual quarterly results were false*. For example, CW1 supposedly stated it was "apparent to Defendants in early to mid second quarter of 2007 that K&G would suffer a "20% decrease in revenue for the quarter and fiscal year." Amended Complaint ¶ 36. As it turned out, however, K&G's total sales revenue increased by 3% during the second quarter (as compared to the second quarter of 2006) and decreased by only 2.5% for the full year versus 2006 – a far cry from 20%. *See* Dkt. #26-10 at 1, 26-16 at 1. Moreover, K&G's comparable store sales revenues declined by 6.9% during the second quarter and 10.9% for the year – again, nowhere close to the 20% supposedly claimed by CW1. *See id.* Plaintiffs can hardly claim that CW1's alleged opinions about K&G's performance show a knowingly false statement by Zimmer or Davis when CW1's own projections turned out to be wildly inaccurate as shown by K&G's actual performance.[25]

- TMW explicitly and repeatedly disclosed that K&G faced weakening demand and would be particularly sensitive to negative economic trends, and that demand for TMW's core men's tailored clothing items was declining.

- TMW regularly updated and revised its guidance as conditions changed.

---

[25] Again, Plaintiffs fail to plead what precise metric the phrase "below plan" refers to. Regardless of whether "plan" means total revenue, comparable store sales, or some other number, Plaintiffs fail to identify any actual second quarter or 2007 annual results by TMW or K&G that were supposedly 20% "below plan."

-9-

- Zimmer and Davis retained the vast majority of their TMW stock holdings and had no incentive to take actions that would cause TMW stock to lose value. Plaintiffs' narrative that Zimmer and Davis intentionally sabotaged K&G's fourth quarter results by ceasing all advertising and ran After Hours into the ground makes no sense. It also makes no sense that Zimmer and Davis would knowingly issue guidance that the company could not achieve, as these individuals continued to hold stock and would suffer any resulting stock price drop themselves when the company ultimately announced a shortfall. This case simply does not have the "pump and dump" fact pattern indicative of fraud.

The Response fails to identify any allegations supporting a strong inference of scienter. The claims regarding After Hours at most amount to a disagreement by anonymous lower-level sources about how to run the business after the acquisition.[26] This type of allegation is plainly insufficient to plead a securities fraud claim.[27] There is also no particularized allegation that Zimmer and Davis made any false statements regarding the pace of integrating After Hours or specifically knew on August 22, 2007, that After Hours would encounter any specific integration issues that would materially reduce tuxedo revenue from their expectations as announced on that day. ***In fact, the confidential witnesses do not identify a single specific communication or instance where Zimmer or Davis were specifically informed of any problems with the integration of After Hours that would require guidance to be lowered, let alone when such conversations occurred or whether they predated TMW's alleged false statements.***[28] TMW also pointedly refused on August 22, 2007, to raise expectations for After Hours' fourth quarter loss outlook, stating that the company had "a lot going on to just transition and integrate [After Hours] as opposed to operating." Dkt. #26-11 at 10. This hardly demonstrates fraud.

---

[26] While Plaintiffs claim Defendants have "twist[ed]" their allegations regarding After Hours (*see* Response at 5), Plaintiffs plead no facts showing that Zimmer and Davis knew in advance of specific ***problems*** with After Hours that would cause guidance to be lower than what was represented.

[27] *See, e.g., Shaw Group*, 537 F.3d at 539 (claims of "corporate mismanagement" do not demonstrate scienter).

[28] *See* Amended Complaint ¶¶ 44-46. Merely stating that TMW replaced After Hours management or made changes to After Hours' business model is not the same thing as alleging with particularity that Zimmer and Davis knew in advance of specific problems with After Hours that made TMW's guidance unattainable.

Plaintiffs' stock-sale allegations also fail to show anything approaching the sort of suspicious, out-of-character, profit-maximizing trading required to plead scienter. *See* Response at 27. Zimmer sold just ***seven percent*** of his total TMW stock holdings during the alleged class period, while Davis sold just 14,002 shares, all but 2,000 of which were sold in March 2007.[29] Such allegations are clearly insufficient in this circuit and elsewhere.[30]

Moreover, while the Response correctly notes that Zimmer filed a new 10b5-1 plan on June 4, 2007,[31] just like he did in July 2005 and May 2006, this hardly supports an inference that Zimmer already ***knew*** on June 4, 2007, that TMW would lower its mid-third quarter guidance ***on October 10, 2007*** (*i.e.*, in a different quarter ***four months*** after he filed the new plan), let alone that TMW would lower its mid-fourth quarter guidance on January 9, 2008. Not only is the volume and frequency of Zimmer's trading not remotely suspicious,[32] but the Fifth Circuit recently rejected drawing this sort of "timing" inference despite a timeframe far more compressed than that alleged here. *See Flaherty & Crumrine*, 565 F.3d at 210 (no strong inference management knew of impending dividend increase before close of tender offer even though company substantially raised dividend just ***eight days*** after completing tender offer).

---

[29] The Response also baldly asserts that "[t]he Fifth Circuit has held that the actions of other knowledgeable insiders are relevant in determining whether stock sales by insiders contribute to an inference of scienter," with no citation for this statement. *See* Response at 27 n.19. The Fifth Circuit actually holds that scienter must be established individually as to the speaker who made the alleged misstatement. *Southland*, 365 F.3d at 366. Regardless, the trading of the non-defendant individuals is no more suspicious than the trades by Zimmer and Davis.

[30] *E.g., Shaw Group*, 537 F.3d at 544 (sale of 57% of executive's stock immediately after positive earnings announcement did not support strong inference of scienter); *Central Laborers*, 553-54 (executive's stock sale profit of $1.44 million did not support strong inference of fraud); *Dell*, 591 F. Supp. 2d at 897 (allegations that defendants sold 29.61% and 49.33% insufficient); *Zucco Partners*, 552 F.3d at 1005-06 (executive sale of 48% insufficient); *Brodsky v. Yahoo! Inc.*, 630 F. Supp. 2d 1104, 1118-19 (N.D. Cal. 2009) (executive sales of 35%-68% of total holdings insufficient); *In re Michaels Stores, Inc. Secs. Litig.*, 2004 WL 2851782, at *13 (N.D. Tex. Dec. 10, 2004) (sale of 18.93% of holdings insufficient); *In re Enron Corp. Secs., Deriv. & ERISA Litig.*, 258 F. Supp. 2d 576, 634-39 (S.D. Tex. 2003) (rejecting insider trading allegations against outside directors who sold "between 20-100% of their Enron holdings during the Class Period for a total of over $1 billion").

[31] *See* Ex. T to Defendants' Motion [Dkt. #26-22] at 14, 16, 17, & 20 (referencing June 4, 2007 plan).

[32] Indeed, the fact that Zimmer entered a new 10b5-1 plan approximately every 10-12 months further confirms that his trading patterns were not unusual or suspicious.

## III. THE FIVE ALLEGED NON-FORWARD-LOOKING STATEMENTS IDENTIFIED IN THE RESPONSE ARE NOT REMOTELY FRAUDULENT

The Response appears to concede that all but five of the alleged false statements alleged in this case are forward-looking. *See* Response at 29. All of the other statements fit well within the PSLRA safe harbor. Plaintiffs simply ignore the numerous specific cautionary statements made during the conference calls and in TMW's Form 10-K, which are identified on pages 6-16 and 32-33 of Defendants' Motion and extend far beyond the "forward-looking statement" disclosures cited in the Response. Plaintiffs also fail to plead specific facts showing that Zimmer and Davis had actual knowledge their forward-looking statements were false, which is a more difficult standard than the already-onerous severe recklessness standard and applies even if there are no cautionary statements. *Southland*, 365 F.3d at 371-72; 15 U.S.C. § 78u5-(c)(1)(B).

Moreover, none of the alleged non-forward-looking statements identified on page 29 of the Response is the slightest bit false or fraudulent. With respect to the first alleged non-forward-looking statement, there is no particularized allegation supporting a strong inference that Zimmer made fraudulent statements regarding After Hours. The statement that TMW was "running ahead of our financial target through the second quarter" was an indisputably true statement, as TMW's actual second quarter results *exceeded* its projected results.[33]

The second alleged non-forward-looking statement on page 29 is a broad, generalized statement with respect to "margin expansion," as to which there are no particularized allegations supporting a strong inference of a fraudulent statement. Indeed, the discussion of margin expansion relates to TMW's expectations on March 7, 2007, and by their nature were forward-

---

[33] The Response omits the paragraph immediately following the "financial targets" statement, which reiterates that K&G "continues to be challenged" and experienced a 6.9% decline in comparable store sales. *See* Dkt. 26-11 at 4. Moreover, there is no allegation TMW's actual quarterly results were false.

-12-

looking. *See* Amended Complaint ¶ 50. There is simply no allegation showing that TMW's "margins" were inflated; indeed, no "confidential witness" even purports to make such a claim.

With respect to the third alleged non-forward-looking statement, while the Response cites Paragraph 67 of the Amended Complaint in arguing that TMW made a non-forward-looking statement regarding comparable store sales, the excerpt cited in Paragraph 67 actually states that "continued softening in traffic trends is driving weaker than planned comparable store sales at the company's K&G stores." *Id.* ¶ 67. This is hardly a fraudulent statement; indeed, it specifically discloses that K&G sales were below expectations.

As to the fourth alleged non-forward-looking statement, Plaintiffs plead no facts showing that the total "profitability" of K&G (as opposed to same-store sales) through August 22, 2007 was not exactly as it was represented on August 22, 2007. *See id.* ¶ 65. Again, there are simply no allegations at all showing that TMW's profit margins were falsely stated.

With regard to the fifth statement, Mr. Davis did not state on November 28 that fourth quarter earnings were already "on track" to exceed fourth quarter 2006 results; rather, after reviewing matters "expected" to impact earnings, he simply provided guidance for the quarter by stating the "expected" range of earnings. *See id.* ¶ 71.[34] This is clearly a forward-looking statement, and Plaintiffs fail to plead facts to overcome either prong of the safe harbor. Regardless, there are no particularized facts showing that the statement was made with scienter.

---

[34] Plaintiffs' use of the phrase "on track" appears to be a disingenuous attempt to make this guidance statement appear to be a non-forward-looking statement of fact. Either way, however, Plaintiffs fail to plead particularized facts showing this statement to be fraudulent when made.

## IV. PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION

Lastly, the Response attempts to distinguish the Fifth Circuit's decision in *Archdiocese of Milwaukee Supporting Fund, Inc. v. Halliburton Co.*[35] by arguing that it only applies to class certification. *See* Response at 34 n.22. *Halliburton*, however, quoted *Lormand v. U.S. Unwired, Inc.* – a Rule 12(b)(6) pleading case – for its holding that the "true facts" revealed in a corrective disclosure must "'make the existence of the actionable fraud more probable than it would be without that alleged fact (taken as true).'"[36] The corrective disclosures must "reveal the ***actionable truth*** about prior misstatements."[37] Plaintiffs fail to explain how the mere allegation that a company missed its guidance "plausibly" shows (as required by *Twombly*) that it is "more probable" than not that the company committed fraud. If that were true, missed guidance would support an inference of fraud in every case. It is well-settled, however, that a company's mere failure to perform as expected does not support an inference of fraud.[38]

Moreover, as stated above, the Response wholly fails to address how loss causation has been pled as to the "advertising" issue, given the absence of any corrective disclosure referencing that issue. *See supra* at 8.[39]

## **CONCLUSION**

Defendants pray that the Court dismiss this action with prejudice and award all further relief to which they are justly entitled.

---

[35] 597 F.3d 330 (5th Cir. Feb. 12, 2010).

[36] *Halliburton*, 597 F.3d at 338 (quoting *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 256 n.20 (5th Cir. 2009)).

[37] *Halliburton*, 597 F.3d at 338 (emphasis added); *see also Catogas v. Cyberonics*, 292 Fed. Appx. 311, 314 (5th Cir. Sept. 8, 2008) (corrective statement must have "revealed the falsity" of defendants' prior statements to survive a Rule 12(b)(6) motion to dismiss).

[38] *See, e.g., In re Azurix Corp. Secs. Litig.*, 198 F. Supp. 2d 862, 882, *aff'd*, 332 F.3d 854 (5th Cir. 2003) ("The mere fact that a business did not live up to expectations is insufficient to create an inference of fraud").

[39] *See In re Dell*, 591 F. Supp. 2d at 909-10 ("[D]isclosure of financial losses generally – ***even if those financial losses are a result of the specific concealed fact*** – is not sufficient' to establish – or allege – loss causation.'") (emphasis added) (quoting *In re Rhodia S.A. Secs. Litig.*, 531 F. Supp. 2d 527, 545 (S.D.N.Y. 2007)).

Respectfully submitted,

FULBRIGHT & JAWORSKI L.L.P.

s/ Gerard G. Pecht
Gerard G. Pecht (Attorney-in-Charge)
State Bar No. 15701800
1301 McKinney, Suite 5100
Houston, Texas  77010-3095
Telephone:  (713) 651-5151
Telecopier:  (713) 651-5246

Peter A. Stokes
State Bar No. 24028017
FULBRIGHT & JAWORSKI L.L.P.
600 Congress Ave., Suite 2400
Austin, Texas 78701-2978
Telephone:  (512) 536-5287
Telecopier:  (512) 536-4598
ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed with the Court's electronic case filing (ECF) system on May 24, 2010, which caused an electronic copy of this document to be served on all counsel of record in this matter.

s/ Gerard G. Pecht
Gerard G. Pecht